NUMBER 13-05-442-CR 



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


DAMIEN MORALES, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 105th District Court 

of Nueces County, Texas.

 


MEMORANDUM OPINION


Before Justices Rodriguez, Garza, and Benavides


Memorandum Opinion by Justice Rodriguez



 Appellant, Damien Morales, was charged by indictment with the offense of
failure to stop and render aid, intoxication manslaughter, and manslaughter. See Tex.
Transp. Code Ann. §§ 550.021, 550.023 (Vernon 1999); Tex. Penal Code Ann. §§
49.08, 19.04 (Vernon 2003). Appellant pleaded not guilty, and a jury convicted him
of both failure to stop and render aid and intoxication manslaughter and assessed
punishment at five and eight years in prison, respectively. By three points of error,
appellant contends (1) the trial court erred in denying his motion to suppress, (2) the
evidence is insufficient to support the deadly weapon finding, and (3) the trial court
abused its discretion in not permitting appellant to offer evidence regarding Michael
Gonzales's driving history. We affirm.

I. Motion to Suppress

 By his first point of error, appellant contends that the trial court erred in denying
his motion to suppress the blood, and the results of the blood alcohol test conducted
thereon, which was taken from appellant at the hospital after the accident, without his
consent as provided by section 724.012 of the transportation code. See Tex. Transp.
Code Ann. § 724.012(b) (Vernon Supp. 2006).

A. Standard of Review and Relevant Law

 The appropriate standard for reviewing most trial court's rulings on a motion to
suppress is a bifurcated standard of review, giving almost total deference to the trial
court's determination of historical facts and reviewing de novo the court's application
of the law. Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) (en banc);
State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (en banc); Carmouche v.
State, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2002); Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc). When reviewing a trial court's
ruling on a mixed question of law and fact, the amount of deference afforded to a trial
court's ruling "often is determined by which judicial actor is in a better position to
decide the issue." Guzman, 955 S.W.2d at 87. We review de novo the application
of the law to facts in this case, but we also afford almost total deference to the trial
court's evaluation of the credibility and demeanor of the witnesses who testified at the
pre-trial hearing. See id. When there are no explicit findings of historical fact, the
evidence must be viewed in the light most favorable to the trial court's ruling, and we
must assume the trial court made implicit findings of fact that support its ruling as long
as those findings are supported by the record. Carmouche, 10 S.W.3d at 327-28. 
"The trial court's ruling must be upheld if it is correct under any theory of law
applicable to the case." Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App.
2005) (citing Romero v. State, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990) (en
banc)).

 Section 724.012(b) of the Texas Transportation Code mandates the taking of
a person's blood or breath if:

 (1) the officer arrests the person for an offense under Chapter 49, Penal
Code, involving the operation of a motor vehicle or a watercraft;


 (2) the person was the operator of a motor vehicle or a watercraft
involved in an accident that the officer reasonably believes occurred as
a result of the offense;


 (3) at the time of the arrest the officer reasonably believes that as a
direct result of the accident:


 (A) any individual has died or will die; or


 (B) an individual other than the person has suffered serious
bodily injury; and


 (4) the person refuses the officer's request to submit to the taking of a
specimen voluntarily.


Tex. Transp. Code Ann. § 724.012(b) (Vernon Supp. 2006). When several officers
are cooperating, their cumulative information is sufficient, and it is not necessary that
the arresting officer share his observations with the officer who requests the test be
performed. McBride v. State, 946 S.W.2d 100, 101-02 (Tex. App.-Texarkana 1997,
pet. ref'd) (reviewing case law in other contexts where cumulative or shared
knowledge of several police officers is sufficient to establish reasonable belief or
probable cause, the McBride Court stated, "We see no reason why one officer should
not be able to rely on the statements and observations of another in this particular
context."); see Tex. Dep't of Pub. Safety v. Walter, 979 S.W.2d 22, 25 (Tex.
App.-Houston [1st Dist.] 1998, no pet.); Porter v. State, 969 S.W.2d 60, 65 (Tex.
App.-Austin 1998, pet. ref'd); see also Woodward v. State, 668 S.W.2d 337, 344
(Tex. Crim. App. 1984) (op. on reh'g) (en banc); Fonseca v. State, 881 S.W.2d 144,
150 (Tex. App.-Corpus Christi 1994, no pet.).

B. Analysis

 In his first point, appellant specifically alleges that Investigator Christopher
Lynch, who ordered the blood draw, had insufficient evidence from which to form a
reasonable belief that appellant was intoxicated and that his intoxication caused or
contributed to the accident. In this case, however, we conclude that the collective
knowledge of the officers was sufficient to have a reasonable belief that appellant was
intoxicated, and that his intoxication caused or contributed to the accident. At the
time the blood was drawn, the officers had knowledge of the following facts: 
appellant ran a stop sign, struck Gonzales, (1) and fled the scene; marihuana was found
in appellant's vehicle; appellant smelled of marihuana; appellant was "glassy-eyed" and
"stared into space;" and appellant seemed confused and hesitant and "glossy-eyed."

 Considering the cumulative knowledge of the officers working on the case,
including witness interviews at the scene regarding the facts of the accident, as well
as the officers' knowledge regarding appellant, his use of marihuana and his
appearance of being under its influence, the police had a reasonable belief that
appellant was intoxicated and that the accident was caused by appellant driving into
Gonzales and doing so while he was intoxicated by marihuana. See McBride, 946
S.W.2d at 101-02; Walter, 979 S.W.2d at 25; Porter, 969 S.W.2d at 65. We
conclude that the requirements of section 724.012(b) were met. The trial court did not err
in overruling appellant's motion to suppress. We overrule appellant's first point of error.

II. Sufficiency of the Evidence to Support Deadly Weapon Finding

 In his second point of error, appellant challenges the sufficiency of the evidence to
support the jury's affirmative finding of the use or exhibition of a deadly weapon--his
vehicle--in the commission of the offense of intoxication manslaughter. 

A. Standard of Review and Relevant Law

 In a legal sufficiency review, (2) we consider all of the properly or improperly admitted
evidence in the light most favorable to the verdict and determine whether, based on that
evidence and reasonable inferences therefrom, a rational jury could have found the
accused guilty of the essential elements of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 319 (1979); Swearingen v. State, 101 S.W.3d 89, 95
(Tex. Crim. App. 2003) (en banc).

 When a challenge is made to the legal sufficiency of a deadly weapon finding, the
reviewing court must determine whether the evidence demonstrated that: (1) the object
meets the statutory definition of a dangerous weapon; (2) the deadly weapon was used or
exhibited during the transaction from which the felony conviction was obtained; and (3)
other people were put in actual danger. Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim.
App. 2005) (en banc). In this case, the applicable definition of a deadly weapon is
"anything that in the manner of its use or intended use is capable of causing death or
serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B) (Vernon Supp. 2006). "A
motor vehicle may become a deadly weapon if the manner of its use is capable of causing
death or serious bodily injury." Drichas, 175 S.W.3d at 798. "Specific intent to use a motor
vehicle as a deadly weapon is not required." Id. Moreover, "[o]ur precedents establish that
anything, including a motor vehicle, which is actually used to cause the death of a human
being is a deadly weapon." Tyra v. State, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995)
(citing Ex parte McKithan, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992) en banc)); see
Jimenez v. State, 67 S.W.3d 493, 508 (Tex. App.-Corpus Christi 2002, pet. ref'd). "This
is necessarily so because a thing which actually causes death is, by definition, 'capable of
causing death.'" Tyra, 897 S.W.2d at 798; Ex parte Beck, 769 S.W.2d 525, 526-27 (Tex.
Crim. App. 1989).

B. Analysis

 Having found appellant guilty of intoxication manslaughter, the jury also found
"beyond a reasonable doubt that a deadly weapon was used or exhibited during the
commission of the offense and that [appellant] used or exhibited the deadly weapon." 
Appellant specifically contends that although he ran a stop sign and entered the
intersection, because Gonzales was speeding around a white limousine and appellant did
not see him when he went through the intersection, "he is not responsible for the
recklessness of the white limousine or the motorcycle Gonzales was operating," and, thus,
the evidence was "insufficient to establish beyond a reasonable doubt that Appellant was
using his vehicle in a manner that constitutes a deadly weapon."

 Considering all of the evidence in the light most favorable to the verdict, appellant
drove a vehicle into an intersection after failing to stop at a stop sign, almost hitting a
pickup truck. Appellant hit Gonzales's motorcycle broadside, and Gonzales sailed into the
air hitting a pole and fell to the ground. Gonzales fractured his neck and died shortly
thereafter. We conclude this evidence demonstrates that (1) appellant's vehicle meets the
statutory definition of a dangerous weapon--the vehicle was actually used to cause the
death in this case; (2) the vehicle was used or exhibited during the events from which the
felony conviction was obtained; and (3) other people were put in actual danger--in fact, a
person was killed. See Drichas, 175 S.W.3d at 798. The actions of other drivers, including
Gonzales, do not impact this analysis, as appellant suggests. Thus, we find that the
evidence in this case, viewed in a light most favorable to the State, supports a conclusion
that a rational trier of fact could have found use of a vehicle as a deadly weapon beyond
a reasonable doubt. Appellant's second point of error is overruled.

III. Appellant's Right to Present a Defense

 By his third point of error, appellant contends that the trial court erred in excluding
evidence that Gonzales had several traffic convictions for speeding which denied him the
right to present a defense and that the trial court's failure to allow such evidence is a Sixth
Amendment constitutional violation. However, although appellant asserts his rights under
the Sixth Amendment Right to present a defense, appellant neither made this objection to
the trial court, nor received a ruling on any such objection. (3) Therefore, this point of error
has not been preserved for our review. See Tex. R. App. P. 33.1(a); Reyna v. State, 168
S.W.3d 173, 179 (Tex. Crim. App. 2005) (holding appellant did not preserve error as to
argument that exclusion of evidence violated Sixth Amendment because appellant did not
refer to the constitution in the trial court and did not put the trial court on notice that he was
alleging a constitutional violation); Eaves v. State, 141 S.W.3d 686, 690-91 (Tex.
App.-Texarkana 2004, pet. ref'd) (holding appellant failed to preserve error as to trial
court's alleged violation of Sixth Amendment by refusal to admit evidence that child
sexual-assault complainant previously had been sexually assaulted, given that appellant
did not voice this argument in the trial court). We overrule appellant's third point of error.

III. Conclusion

 Accordingly, we affirm the judgment of the trial court.

 

 NELDA V. RODRIGUEZ

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 9th day of August, 2007.
1. Appellant notes that upon impact, Michael Gonzales was thrown from his motorcycle into a
lamp post and killed almost instantly.
2. In this point of error, appellant only generally complains of the sufficiency of the evidence to
support the jury's finding regarding the use or exhibition of a deadly weapon. Appellant does not specify
whether his challenge is to the legal sufficiency of the evidence or its factual sufficiency. Because
appellant provides only the legal sufficiency standard of review and arguments related to legal
sufficiency, we construe this point of error only as a challenge to the legal sufficiency of the evidence
to support the finding. See Cardenas v. State, 30 S.W.3d 384, 386 n.2 (Tex. Crim. App. 2000)
(conducting only legal sufficiency review where defendant requested acquittal and did not adequately
brief factual sufficiency); Chavero v. State, 36 S.W.3d 688, 693 (Tex. App.-Corpus Christi 2001, no
pet.) (same).
3. Following the State's objection to testimony regarding Gonzales's citations for speeding, and
after the jury left the courtroom, the State argued that the witness had no personal knowledge of the
citations and that the testimony would have no relevance to his case. In response, defense counsel
asserted that speed was at issue; that Gonzales had to speed around a vehicle, and that two deferred
speeding citations were relevant. After the trial court sustained the State's objection, the following
exchange took place:


 Defense Counsel: Okay. So I don't violate any ruling from the [c]ourt, are you
telling me I can't ask anything about speeds?


 The Court: Anything about speeding citations or convictions or deferred
adjudications.


 Defense Counsel: Okay, so the court is not going to bother - not going to - I'm
not in violation if I ask every witness whether or not he has got
a traffic citation for speeding?


 The Court: No, you would be in violation if you ask a witness whether
Gonzales had a citation, a conviction, or deferred adjudication
for speeding.


 Defense Counsel: Okay, so you're prohibiting me from asking all the witnesses -


 The Court: Yes, sir.


 Defense Counsel: - and I want for the purpose of the record, Your Honor, I want
this witness [and other witnesses], if they intend to testify, I
intend to offer that testimony and, Your Honor, I will tender to
the Court the records that I have in my file that show that
Gonzales had at least two deferred adjudications for speeding in
Corpus Christi.


 The Court: Very well. Let's bring the jury in.